FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
ALEXANDRIA DIVISION

2013 NOV -1  P 12: 23

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ALEXANDRA HUNT,
    14320 Lindendale Road
    Woodbridge, Virginia 22193

        **PLAINTIFF,**

    v.

OSI RESTAURANT PARTNERS, LLC,
    2202 North West Shore Boulevard
    Fifth Floor, Legal Department
    Tampa, Florida 33607
        Serve Registered Agents:
            Joseph K. Kadow, Esq.
            2202 North West Shore Boulevard
            Fifth Floor, Legal Department
            Tampa, Florida 33607
        and
            Corporate Creations Network Inc.
            3411 Silverside Road, No. 104
            Rodney Building
            Wilmington, Delaware 19810

    and

OS RESTAURANT SERVICES, LLC,
    2202 North West Shore Boulevard
    Fifth Floor, Legal Department
    Tampa, Florida 33607
        Serve Registered Agent:
            Corporate Creations Network Inc.
            4445 Corporation Lane
            Second Floor
            Virginia Beach, Virginia 23462
        and
            Corporate Creations Network Inc.
            3411 Silverside Road, No. 104
            Rodney Building
            Wilmington, Delaware 19810

    and

Civil Action No. 1:13-CU-1361
(LMB / IDD)

ANTWAUN DAY,                                              )
    10711 Hamiltons Crossing Drive                   )
    Fredericksburg, Virginia 22408                   )
                                                         )
    and                                              )
                                                         )
LUIS CARBONELL,                                          )
    4427 Berwick Place                               )
    Woodbridge, Virginia 22192                       )
                                                         )
          **DEFENDANTS.**                          )
_____)

## COMPLAINT

COMES NOW, Alexandra Hunt ("Plaintiff"), by counsel, and files this Complaint against OSI Restaurant Partners, LLC, OS Restaurant Services, LLC, Antwaun Day and Luis Carbonell (collectively, "Defendants") on the following grounds:

### NATURE OF ACTION

1.      This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

2.      Defendants discriminated against Plaintiff on basis of her gender by sexually harassing her and retaliated against her upon her subsequent opposition.

### JURISDICTION

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332 because this action arises under federal law, the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

### VENUE

4.      Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b) and Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because a substantial

part of the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## PARTIES

5.      Plaintiff is a female who resides in the Commonwealth of Virginia. At all times relevant to this lawsuit, until her termination in February 2012, she was employed with Defendants at their Outback Steakhouse Restaurant location at 14580 Potomac Mills Road, Woodbridge, Virginia 22191 ("the Restaurant").

6.      Defendant OSI Restaurant Partners, LLC ("Defendant OSI Partners") is a Delaware limited liability company that owns and operates Outback Steakhouse restaurants, including the Restaurant. Defendant OSI Partners employs hundreds of individuals nationwide and is headquartered in Tampa, Florida.

7.      Defendant OS Restaurant Services, LLC ("Defendant OS Services") is a Delaware limited liability company that owns and operates Outback Steakhouse restaurants, including the Restaurant. Defendant OS Services employs hundreds of individuals nationwide, is headquartered in Tampa, Florida and is registered to do business in the Commonwealth of Virginia.

8.      Defendant Antwaun Day ("Defendant Day") is an individual who resides in Fredericksburg, Virginia and was employed as a Manager at the Restaurant during Plaintiff's employment. Defendant Day supervised Plaintiff and directly engaged in sexual harassment and retaliation against her.

9.      Defendant Luis Carbonell ("Defendant Carbonell") is an individual who resides in Woodbridge, Virginia and is the Managing Partner or Proprietor at the Restaurant. Defendant Carbonell was aware of the sexual harassment suffered by Plaintiff. He reprimanded

2

and retaliated against Plaintiff rather than correcting the violations upon hearing Plaintiff's allegations.

10. All of the acts or omissions alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise or under the direction and control of the others, except as specifically alleged otherwise. The acts or omissions were within the scope of such agency or employment, and each Defendant participated in, approved or ratified the unlawful conduct by the other Defendants. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and omissions of each Defendant acting individually, jointly or severally.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff has exhausted her administrative remedies. She timely filed administrative charges of gender discrimination, sexual harassment and retaliation against Defendants with the U.S. Equal Employment Opportunity Commission (EEOC), Washington Field Office, EEOC Charge No. 570-2012-02206.

12. In August 2013, Plaintiff received notice of the EEOC's closing the file on her charge and her suit rights.

## STATEMENT OF FACTS

13. Plaintiff was employed as a hostess at the Restaurant from August 2011 until February 2012.

14. Plaintiff was sixteen (16) years old during her employment with Defendants.

15. Defendants discriminated against Plaintiff on the basis of her gender by committing and condoning sexual harassment.

16.     Further, Defendants retaliated against Plaintiff for engaging in protected activity.

## Gender Discrimination and Sexual Harassment

17.     In September 2012, when Plaintiff had been a hostess at the Restaurant for less than a month, Defendant Day began making inappropriate, uninvited sexual remarks towards her.

18.     The sexual harassment began with crude comments, such as Defendant Day calling her "boo."

19.     Around November 2012, Defendant Day's behavior had perpetuated to the degree that on one occasion, he said to another employee "let's have sex with her."

20.     This other employee, who was later terminated without cause, hesitated and questioned Defendant Day's remark.

21.     Defendant Day retorted, "Who cares?  Let's just fuck her."

22.     On another occasion during the winter of 2011 and 2012, prior to Plaintiff's termination, Defendant Day commented on Plaintiff's breasts:  "Pull out them big melons and show daddy what they look like."

23.     Plaintiff was subjected to this behavior during almost every shift at the Restaurant.

24.     Defendant Day was in his 20s or 30s whereas Plaintiff was 16 years old.

25.     Accordingly, Plaintiff was frightened and unaware of the means of stopping his continuous harassment.

**Retaliation**

26.     As punishment for spurning his advances, Defendant Day, who was in charge of Plaintiff's work schedule, began taking hours away from her and constantly counseled Plaintiff about her alleged "negative" attitude towards him.

27.     On January 5, 2012, Defendant Carbonell informed Plaintiff that Defendant Day had been complaining about Plaintiff's alleged negative attitude toward him. However, Defendant Carbonell told Plaintiff not to worry about it because he was the head manager, saw nothing wrong with Plaintiff's attitude and that Plaintiff was his best employee.

28.     On January 14, 2012, Plaintiff met with Defendant Carbonell to inform him of the sexual harassment Plaintiff had been enduring from Defendant Day since he became Plaintiff's manager.

29.     At that time, Plaintiff gave Defendant Carbonell numerous examples of his unprofessional behavior towards me and other female staff.

30.     Defendant Carbonell told Plaintiff that he would address the situation immediately and would be discussing everything with the Joint Venture Partner for the region, Rob Langley.

31.     On January 16, 2012, Plaintiff's mother, Defendant Carbonell and Plaintiff met at the Restaurant to discuss Plaintiff's fear of being fired for lodging the complaint against Defendant Day.

32.     At the meeting, Defendant Carbonell said that he and Mr. Langley had met with Defendant Day, Mr. Langley was conducting an investigation into the matter and Defendant Carbonell would protect Plaintiff.

33.     Further, Defendant Carbonell expressed that the Restaurant would not tolerate such behavior from any of their staff and that action would be taken.

34.     Plaintiff's mother, who had spoken to other female staff members at the Restaurant, gave Defendant Carbonell their names and suggested that he speak directly to them about Defendant Day's advances and unacceptable behavior towards them.

35.     She expressed her concern about Plaintiff's continuing to work under Defendant Day.

36.     Defendant Carbonell ensured Plaintiff's mother and Plaintiff that Plaintiff would not be directly supervised by Defendant Day, Plaintiff was "[his] best employee and that [he] will protect [Plaintiff] as if [she] were [his] own daughter."

37.     Defendant Carbonell said that he had never received any complaints about Plaintiff's work ethic or behavior from any other employee or any customer with the exception of Defendant Day.

38.     Upon information and belief, Defendant Day was never counseled nor received any remediation.

39.     Defendant Day was never removed as Plaintiff's supervisor and within one week of the aforementioned meeting, Defendant Day began singling Plaintiff out and ensured she was scheduled during school hours or other inconvenient times.

40.     Further, Defendant Day continuously berated Plaintiff in front of other co-workers and counseled her continuously about her alleged negative attitude towards him.

41.     For example, Defendant Day would not allow Plaintiff to take breaks to eat during 12-hour long shifts

42.     Generally, Defendant Day treated Plaintiff with far more hostility than he did before.

43.     Plaintiff was constantly scheduled during the same work schedule as Defendant Day and he continued to be Plaintiff's direct line supervisor.

44.     Once again, Plaintiff complained to Defendant Carbonell, this time about Defendant Day's retaliation following the January 16, 2012 meeting.

45.     Just as in the past, Defendant Carbonell reassured Plaintiff that he would amend Plaintiff and Defendant Day's respective schedules so that they would not have to work together.

46.     However, Defendant Carbonell failed to deliver on this promise and Plaintiff continued being subjected to Defendant Day's abuse and hostility during work.

47.     In fact, contrary to Defendant Carbonell's assurances, Plaintiff was scheduled to work with Defendant Day the day after Defendant Carbonell told Plaintiff that their shifts would not overlap.

48.     In spite of Defendant Carbonell's portrayal that he would "protect" Plaintiff from Defendant Day, he himself actively engaged in retaliating against Plaintiff for bringing the entire situation to light.

49.     On March 1, 2012, when Plaintiff reported to work, Defendant Carbonell approached Plaintiff and told her to leave.

50.     When Plaintiff asked why, he said, "you need to go home" and that Plaintiff would not be working that evening or the next day.

51.     Defendant Carbonell requested that Plaintiff call him on Friday and he would let her know if she was to report for work on Saturday.

52.     Plaintiff again inquired about the reasons—Defendant Carbonell told her that she needed to leave, therefore she left.

53.     When Plaintiff later called Defendant Carbonell, he said, "we are through with you."

54.     Plaintiff asked him if she was being fired and he again told her that "we are through with you."

55.     Defendant Carbonell alleged that Plaintiff was "so very, very bad, [he couldn't] even begin to discuss it over the phone."

56.     He told Plaintiff that if she would like to know the details, then she needed to come to the Restaurant the next day and discuss it with him in person.

57.     On March 3, 2012, Plaintiff went to the Restaurant as requested.

58.     Defendant Carbonell indicated to the staff that he would not meet with Plaintiff.

59.     Plaintiff then went to the kitchen where Defendant Carbonell was located and told him that she came in to meet him as requested.

60.     Defendant Carbonell began shouting and told Plaintiff that he was not going to talk to her and to "get out of [his] restaurant."

61.     Plaintiff told Defendant Carbonell that she had a right to know why she was being fired; he shouted, "you have no rights, get out."   He then told Defendant Day to call the police.

62.     Once the Joint Venture Partner, Mr. Langley, became aware of Plaintiff's termination, he called Plaintiff's parents pleading that she resume her position at the Restaurant.

63.     At this point, neither Plaintiff nor her parents were comfortable with Plaintiff returning to such an atrocious work environment, especially given Plaintiff's young age.

64.     Additionally, David Kent, a former assistant manager who was moved to the Warrenton, Virginia branch, informed Plaintiff that Mr. Langley hated Plaintiff "because [she] filed a sexual harassment complaint against Antwaun Day."

65.     Defendant Day was sent home the evening of March 3, 2012, shortly after Mr. Langley's plea with Plaintiff's parents.

66.     Defendant Day did not report to work for approximately one week.

67.     However, he returned to his duties as Assistant Manager the following week.

68.     Furthermore, Mr. Day was transferred to the Fredericksburg branch shortly after Plaintiff's counsel notified Defendants' counsel of her claims of Title VII violations.

69.     As a result of Defendants' unlawful gender discrimination, sexual harassment, reckless indifference to this practice and subsequent termination of Plaintiff, she lost her source of income and experienced extreme emotional distress.

## CLAIMS FOR RELIEF

### Count I
*Gender Discrimination and Sexual Harassment
in Violation of Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e-2(a)*

70.     Plaintiff realleges the preceding paragraphs as though fully set forth herein.

71.     Defendants discriminated against Plaintiff because of her gender intentionally, willfully or with reckless indifference to her federally protected rights.

72.     Defendants' conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), which makes it unlawful to discriminate against employees on the basis of gender.

73.    Defendants discriminated against Plaintiff in violation of Title VII when they Defendant Day sexually harassed her and when Defendants failed to provide Plaintiff any remedies upon knowledge of Defendant Day's discriminatory behavior.

74.    As a result of Defendants' discriminatory actions, Plaintiff has suffered lost compensation, diminished earning capacity, humiliation, mental anguish and emotional distress.

75.    For the damages arising from her suffering, Plaintiff requests relief in the Prayer for Relief below.

### Count II
*Retaliation in Violation of Title VII of the Civil Rights Act of 1964,*
*42 U.S.C. 2000e-3(a)*

76.    Plaintiff realleges the preceding paragraphs as though fully set forth herein.

77.    Defendants' conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), which makes it unlawful to discriminate or take adverse actions against employees who oppose any practice that is unlawful under Title VII.

78.    Defendants retaliated against Plaintiff in violation of Title VII when they reprised her for opposing gender discrimination and sexual harassment at the Restaurant by creating a hostile work environment, falsely accusing her of having a negative attitude, giving her a work schedule that interfered with school knowing that she was a minor, purposely scheduling her to work with Defendant Day and terminating her for reporting unlawful gender discrimination, sexual harassment and retaliation by Defendants Day and Carbonell.

79.    As a result of Defendants' discriminatory actions, Plaintiff has suffered lost compensation, diminished earning capacity, humiliation, mental anguish and emotional distress.

80.    For the damages arising from her suffering, Plaintiff requests relief in the Prayer for Relief below.

### Prayer for Relief

WHEREFORE, Plaintiff requests that this Court award Plaintiff:

a.      $300,000 in compensatory damages for Defendants' unlawful employment practices against her, including but not limited compensation for emotional distress, back and front pay, benefits and all other emoluments of her position;

b.      Punitive damages;

c.      Attorneys' fees and costs of this action, including pre- and post- judgment interest at the legal rate on damages as appropriate; and

d.      Any further relief that this Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  November 1, 2013

Respectfully submitted,
ALEXANDRA HUNT
By counsel

FIRSTPOINT LAW GROUP, P.C.

Katherine Martell, VSB No. 77027
Meredith Ralls, VSB No. 82548
10615 Judicial Drive
Suite 101
Fairfax, Virginia 22030
Phone: (703) 385-6868
Fax:    (703) 385-7009
kmartell@firstpointlaw.com
mralls@firstpointlaw.com
*Counsel for Plaintiff*